## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **TIMOTHY PALMER**, | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | |
| | § | |
| **CITY OF EL PASO;** | § | |
| **OFFICER LOONEY,** *individually and in* | § | **EP-22-CV-00232-DCG** |
| *his official capacity;* | § | |
| **OFFICER WITTERSTAUTER,** | § | |
| *individually and in his official capacity;* **and** | § | |
| **JOHN and JANE DOES 1-10,** | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Defendants Officer Roberto Looney and Officer Jose Witterstauter (the "Officers") move to dismiss Plaintiff Timothy Palmer's excessive force claims under Federal Rule of Civil Procedure 12(b)(6).[1]  Mot., ECF No. 21.  The Court **GRANTS** the Officers' Motion, but also **GRANTS** Plaintiff leave to amend his Complaint.

## I.    BACKGROUND

### A.    Plaintiff's Factual Allegations

For the purposes of recounting this case's facts, the Court assumes all well-pleaded allegations in Plaintiff's Complaint are true.[2]

---

[1] Plaintiff also named the City of El Paso as an additional defendant.  *See* Compl., ECF No. 1, at 1.  The City answered Plaintiff's Complaint instead of moving to dismiss it.  Answer, ECF No. 13.  This Memorandum Opinion and Order therefore only addresses Plaintiff's claims against the Officers.

[2] *See, e.g.*, *McCoy v. Miss. State Tax. Comm'n (In re McCoy)*, 666 F.3d 924, 926 (5th Cir. 2012) ("The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))).

On July 6, 2019, Plaintiff was speaking to a friend on a public sidewalk when the Officers drove past him in their patrol car.  Compl. at 1.  The Officers thought they smelled marijuana, so they stopped to question Plaintiff.  *Id.*  Plaintiff admitted he had smoked marijuana earlier, so Officer Looney decided to arrest him.  *Id.*

In response, Plaintiff fled.  *Id.*  The Officers chased and ultimately caught Plaintiff.  *Id.* "Once they caught him," they allegedly "assaulted," "beat[,] and subdued" him, thereby inflicting "skull fractures, facial fractures, and brain injuries."  *Id.*

The Complaint contains virtually no other details about the incident.  Other than the fact that Plaintiff fled from the Officers, the Complaint contains no allegations regarding Plaintiff's own conduct during the chase and apprehension.  *See id.*  For instance, the Complaint does not specify whether Plaintiff tried to escape from the Officers' grasp or otherwise resist arrest once the Officers caught up to him.  *See id.*

Nor does the Complaint specify what the Officers actually did to Plaintiff.  *See id.* Although Plaintiff asserts that the Officers "assaulted" and "beat" him, he doesn't specify how (*i.e.*, with batons, with fists, by tackling him to avert his escape, *etc.*).  *See id.*  Nor is it clear from the Complaint whether the Officers injured him in the *process* of arresting him—such as by striking him to avert an attempt to escape their clutches while they handcuffed him—or if they instead injured him *after* they successfully restrained and subdued him, when he posed no further risk of flight.[3]

---

[3] *See* Compl. at 1 ("[The Officers] then chased [Plaintiff], ultimately catching him.  Once they caught him, they assaulted him."); *id.* (alleging that the Officers "beat and subdued him," without specifying whether they beat him while subduing him or afterwards).

Although Plaintiff insists in his Response that the Officers "assaulted him" after "he was no longer fleeing," Resp., ECF No. 23, at 4, the Complaint is too vague to determine whether the Officers had successfully immobilized Plaintiff before they allegedly injured him, *see* Compl. at 1.

B.      **Procedural Posture**

Plaintiff claims that the Officers violated the Fourth Amendment to the U.S. Constitution by employing excessive force against him.[4]  Compl. at 3–4.[5]  He therefore asserts claims against the Officers under 42 U.S.C. § 1983, *id.* at 4, which "authorizes a plaintiff to bring a lawsuit "against any person" acting under color of law "for violation of federal rights," *e.g.*, *Daves v. Dallas County*, 22 F.4th 522, 532 (5th Cir. 2022) (en banc) (cleaned up); *see also* 42 U.S.C. § 1983.

Invoking the doctrine of qualified immunity, the Officers move to dismiss Plaintiff's claims.  *See generally* Mot.

## II.      DISCUSSION

A.      **Federal Rule of Civil Procedure 12(b)(6)**

"To survive a motion to dismiss" under Rule 12(b)(6), the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *E.g.*, *Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263 (5th Cir. 2019) (cleaned up).  "Though the complaint need not contain detailed factual allegations, it must contain sufficient factual material to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *E.g.*, *id.* (cleaned up).  Although a court "must accept the facts in the complaint as true," the court "will not accept as

---

[4] Plaintiff clarifies in his Response that he is not asserting an additional claim that his "initial detention was an unlawful seizure."  Resp. at 2.

[5] *See also, e.g.*, U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."); *Timpa v. Dillard*, 20 F.4th 1020, 1028 (5th Cir. 2021) ("Where a plaintiff alleges excessive force during an arrest, 'the federal right at issue is the Fourth Amendment right against unreasonable seizures.'" (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014))).

true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (cleaned up).

"[A] plaintiff seeking to overcome qualified immunity" at the Rule 12(b)(6) phase "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* at 267 (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).

**B.      Qualified Immunity**

The doctrine of qualified immunity "protects public officials acting in their individual capacity from lawsuits and liability for damages under Section 1983 unless their conduct violates a clearly established . . . right." *E.g.*, *Garcia v. Orta*, 47 F.4th 343, 351 (5th Cir. 2022).  Once a defendant asserts qualified immunity, the plaintiff bears the burden to demonstrate that

>   (1)      "the official violated a statutory or constitutional right" that was

>   (2)      "clearly established at the time" of the alleged violation.

*McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023) (cleaned up).  "The court need not decide the first question before the second, and it may decide the case solely on the basis that the right was not clearly established." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022).

**1.      Excessive Force**

"[T]o state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege:"

>   (1)      "an injury that"

>   (2)      "resulted directly and only from the use of force that was excessive to the need," and that

>   (3)      "the use of force . . . was objectively unreasonable."

*E.g.*, *Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008).  Whether any particular use of non-deadly force[6] is excessive is a fact-intensive inquiry that depends on, among other things,

    (1)    "the severity of the crime at issue;"

    (2)    "whether the suspect poses an immediate threat to the safety of the officers or others;" and

    (3)    "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."

*Byrd v. Cornelius*, 52 F.4th 265, 270 (5th Cir. 2022).  These considerations are called the "*Graham* factors," after *Graham v. Connor*, 490 U.S. 386, 396 (1989).  *See, e.g.*, *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (using the phrase).

    Besides considering "the *need* for force," the Court must also assess "the *relationship* between the need and the amount of force used."  *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (cleaned up) (emphasis added) (quoting *Deville*, 567 F.3d at 167).  "The timing, amount, and form of a suspect's resistance are key to determining whether the force used by an officer was appropriate or excessive."  *Id.*

### 2.    Clearly Established Law

    A right is "clearly established" for the purposes of qualified immunity if "every reasonable official would have understood that what he is doing violates that right.'"  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  Qualified

---

[6] A more rigorous standard applies when an officer uses *deadly* force.  *See, e.g.*, *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015) ("[T]o reasonably use deadly force, an officer must, at the very least, have 'probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" (emphasis omitted) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985))).  Plaintiff doesn't argue or allege that the Officers employed deadly force here.  *See generally* Compl.; Resp.

immunity thereby "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id*. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A plaintiff may satisfy the "clearly established law" requirement by either:

(1)      "identify[ing] an on-point case;" or

(2)      "satisfy[ing] the obvious-case exception" to qualified immunity.

*Henderson v. Harris County*, 51 F.4th 125, 132 (5th Cir. 2022).

### a.      Existing Precedent

To successfully do the first of those two things, the Plaintiff must "identify a case— usually, a body of relevant case law—in which an officer acting under similar circumstances was held to have violated the Constitution."  *Joseph*, 981 F.3d at 330 (cleaned up).  "While a plaintiff need not find a case *directly* on point, existing precedent must have placed the statutory or constitutional question *beyond debate*."  *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up) (emphasis added) (quoting *Mullenix*, 577 U.S. at 12).

"[W]hile the right to be free from excessive force is" of course "clearly established in a *general* sense," that is not the proper inquiry.  *See, e.g.*, *Bush*, 513 F.3d at 502 (emphasis added). The Supreme Court has repeatedly admonished lower courts "not to define clearly established law at" such "a high level of generality."  *Mullenix*, 577 U.S. at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  Instead, the question is whether "the officer had fair notice—in light of the specific context of the case, not as a broad general proposition—that his *particular* conduct was unlawful."  *Craig v. Martin*, 49 F.4th 404, 417 (5th Cir. 2022) (cleaned up).  Put another way, "police officers are entitled to qualified immunity unless existing precedent squarely governs the *specific facts* at issue."  *Id*. (emphasis added) (quoting *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019)).

### b.  The Obvious-Case Exception

The second way a plaintiff may surmount the "clearly established law" hurdle is to satisfy "the obvious-case exception."  *Henderson*, 51 F.4th at 132.  In "rare" cases, "analogous case law is not needed" to defeat qualified immunity "because the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Joseph*, 981 F.3d at 330 (cleaned up); *see also, e.g.*, *Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (denying qualified immunity where "no reasonable . . . officer could have concluded that" the defendants' actions were "constitutionally permissible").  In other words, qualified immunity "does not immunize those officials who commit novel, but patently obvious, violations of the Constitution."  *Tyson v. Sabine*, 42 F.4th 508, 520 (5th Cir. 2022) (cleaned up).

### C.  Clearly Established Law

### 1.  *Bush v. Strain*

Plaintiff has cited only one case that, in his view, "clearly establishe[s]" the right at issue here: *Bush v. Strain*, 513 F.3d at 502.  *See* Resp. at 4.  In *Bush*, the defendant police officer arrested the plaintiff after she threw a cup of water at a witness the officer was interviewing.[7] 513 F.3d at 496.  When the officer first tried to handcuff the plaintiff's right hand, she pulled her right arm away.  *Id.*  Once the officer grabbed her hand in response, however, she immediately stopped resisting arrest, and the officer finished handcuffing her.  *Id.*  Even though the plaintiff had "ceased her resistance and both hands were cuffed," the officer allegedly "placed his hand behind [the plaintiff's] neck and head and forced her face into the rear window of a nearby vehicle, injuring her jaw and breaking two of her teeth."  *Id.*

---

[7] The Court recounts *Bush*'s facts based on that case's summary judgment record, viewing those facts in the light most favorable to the plaintiff.  *See Bush*, 513 F.3d at 497.  The defendants introduced competing evidence supporting a markedly different version of events.  *See id.* at 496.

The Fifth Circuit ruled that the officer wasn't entitled to qualified immunity. *Id.* at 502. The court emphasized that the plaintiff "was not resisting arrest or attempting to flee when [the defendant] forcefully slammed her face into a nearby vehicle." *Id.*  To the contrary, the plaintiff was "restrained and subdued" when the officer employed the allegedly excessive force. *Id.*  The Fifth Circuit opined that, at the time the officer inflicted plaintiff's injuries, the law was "clear enough that [the officer] should have known that he could not forcefully slam [the plaintiff's] face into a vehicle" after she stopped resisting arrest. *Id.*

*Bush*, in Plaintiff's view, is "directly on point."  Resp. at 5.  According to Plaintiff, just as the officer in *Bush* "should have known that he could not forcefully slam [the plaintiff]'s face into a vehicle while she was restrained and subdued," 513 F.3d at 502, the Officers here should have known that they could not "beat [Plaintiff] so severely . . . that he suffered cranial fractures and brain injury" once they caught him, Resp. at 4.

As discussed, however, one of the factors bearing on whether force is excessive is whether the plaintiff "attempt[ed] to evade arrest by flight."  *Byrd*, 52 F.4th at 270 (quoting *Graham*, 490 U.S. at 396).  Unlike the plaintiff in *Bush*, Plaintiff admits that he fled from the Officers when they tried to arrest him.  *Compare* Compl. at 1 ("Officer Looney then made the decision to arrest [Plaintiff], who fled."), *with Bush*, 513 F.3d at 502 ("[The plaintiff] was not . . . attempting to flee when [the defendant] forcefully slammed her face into a nearby vehicle."). Because *Bush* "do[es] not involve . . . fleeing," *Bush* cannot constitute clearly established law in cases where police officers used force against a fleeing suspect.  *See Henderson*, 51 F.4th at 128–29, 134 (concluding that *Bush* did not constitute clearly established law in case where officer tased plaintiff after foot pursuit).  Because Plaintiff hasn't directed the Court to any cases other than *Bush*, *see generally* Resp., he hasn't carried his "burden to point out the clearly

established law," *see Rogers v. Hall*, 46 F.4th 308, 312–13 (5th Cir. 2022) (quoting *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019)).

## 2. The Obvious-Case Exception

Perhaps anticipating that conclusion, Plaintiff insists that he need not identify analogous precedent because "no reasonable officer could have believed that the" Officers' actions "were constitutionally permissible."  Resp. at 5 (citing *Taylor*, 141 S. Ct. at 53).

To satisfy the obvious-case exception in the excessive force context, the plaintiff must show that "*the Graham excessive-force factors themselves* . . . clearly establish the answer" to whether the officer's action is constitutional.  *See Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) (emphasis added).  Thus, if any of the *Graham* factors weigh in the defendant's favor, the case is unlikely to be an obvious one.[8]

Again, Plaintiff admits that he "fled" after "Officer Looney . . . made the decision to arrest" him.  Compl. at 1.  Thus, one of the *Graham* factors—namely, whether Plaintiff was "attempting to evade arrest by flight"—cuts against him.  *See Byrd*, 52 F.4th at 270.  Plaintiff has therefore not persuaded this Court that this is an obvious case of excessive force, such that Plaintiff need not point to factually analogous precedent.

---

[8] *See, e.g.*, *Woods v. Harris County*, No. 4:18-cv-1152, 2022 WL 18396216, at *10 (S.D. Tex. May 26, 2022), *report and recommendation accepted in relevant part by* Order on Defendants' Motions for Summary Judgment and Plaintiffs' Objections to the Magistrate Judge's Memorandum and Recommendation at 6, *Thomas v. Harris County*, No. 4:18-cv-1152 (S.D. Tex. Aug. 22, 2022), ECF No. 118 ("Given that one of the *Graham* factors weighed in [the defendant]'s favor—namely, [the plaintiff]'s resisting arrest—the Court is not convinced that this case is obvious.").

D.     **Pleading Defects**

Although Plaintiff has neither directed the Court to an on-point case nor established that the obvious-case exception applies, the Court may consult opinions involving fleeing suspects that it found during its own research to evaluate whether the law is clearly established.[9]  Because the allegations in Plaintiff's Complaint are so vague, however, the Court can't determine whether this case is factually analogous to those decisions.

Consider, for instance, *Joseph ex rel. Estate of Joseph v. Bartlett*.[10]  The plaintiff there—like Plaintiff here—ran from the police.[11]  981 F.3d at 326.  After officers cornered the plaintiff behind a convenience store counter, he dropped to the ground and assumed the fetal position.  *Id.* Even though the plaintiff exerted "no resistance other than flailing his arms and legs," *id.* at 335, the officers tased him twice and inflicted "twenty-six blunt-force injuries to his face, chest, back, extremities, scrotum, and testes," *id.* at 327, 343.  The plaintiff died two days later.  *Id.* at 325. The Fifth Circuit held that a jury could reasonably conclude from that evidence that the officers employed excessive force.  *Id.* at 335.

Plaintiff hasn't alleged enough facts to assess whether this case is anything like *Joseph*. To begin, other than the fact that he fled from the Officers, Plaintiff did "not plead any facts regarding his own conduct during the incident."  *Compare, e.g.*, *Jackson v. City of Beaumont*

---

[9] *See Joseph*, 981 F.3d at 338 (holding that a court "needn't limit [its] analysis to the cases cited by [the p]laintiff[]" when determining whether a defendant is entitled to qualified immunity); *cf. Elder v. Holloway*, 510 U.S. 510, 516 (1994) ("A court engaging in review of a qualified immunity judgment should . . . use its full knowledge of its own and other relevant precedents." (cleaned up)).

[10] The Court recounts the facts of *Joseph* based on the case's summary judgment record, construed in the light most favorable to the plaintiff.  *See Joseph*, 981 F.3d at 325.

[11] Unlike Plaintiff here, the plaintiff in *Joseph* "was not suspected of committing a crime."  *See Joseph*, 981 F.3d at 339; *see also id.* at 326 (noting that the police approached the plaintiff because he was acting strangely near a school).  The Court does not now decide whether that distinction precludes *Joseph* from serving as clearly established law here.

*Police Dep't*, 958 F.2d 616, 621 (5th Cir. 1992), *with* Compl. at 1.  The Court therefore doesn't know whether—like the plaintiff in *Joseph*—Plaintiff "immediately dropped onto the floor" and offered "no resistance" once the Officers caught up to him, *see* 981 F.3d at 334–35, or if he instead "continued to resist detention," *see, e.g.*, *Gresham v. Fischer*, No. 14-CV-739, 2015 WL 4068638, at *5 (W.D. Tex. July 1, 2015), *aff'd*, 630 F. App'x 357 (5th Cir. 2016).  Plaintiff must plead facts about his own actions during the pursuit and apprehension so the Court can assess whether the Officers employed force that was disproportionate to the need to avert his escape. *See, e.g.*, *Jackson*, 958 F.2d at 621.

It's also impossible to tell from the Complaint whether the Officers injured Plaintiff in the *process* of restraining and arresting him, or if they instead injured him *after* he posed no further flight risk.[12]  The distinction matters, as "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Zimmerman v. Cutler*, 657 F. App'x 340, 347 (5th Cir. 2016) (quoting *Graham*, 490 U.S. at 396).

To illustrate, consider *Gresham v. Fischer*.[13]  In that case, a police officer named Vincent Fischer attempted to arrest Tate Ryan Gresham for underage drinking and public intoxication. 2015 WL 4068638, at *1–2.[14]  Like Plaintiff, Gresham fled on foot when Fischer tried to arrest him.  *Id.* at *1.  After Gresham ignored Fischer's commands to stop, Fischer tased him in the

---

[12] *See supra* note 3 and accompanying text.

[13] The Court recognizes that, as a district court case, *Gresham* cannot constitute clearly established law.  *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("Many Courts of Appeals . . . decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity.").  The Court cites *Gresham* merely to illustrate that, without further information about the incident, the Court cannot determine whether Plaintiff has pleaded a valid excessive force claim.

[14] *See also Byrd*, 52 F.4th at 270 (noting that "the severity of the crime at issue" bears on whether force is excessive (quoting *Graham*, 490 U.S. at 396)).

back to avert his escape, causing Gresham to hit the pavement face first and sustain numerous injuries.[15]  *Id.*  When Fischer's colleague attempted to handcuff Gresham, Gresham continued to resist arrest, so Fischer tased him a second time.  *Id.*

The district court concluded that Fischer was entitled to qualified immunity.  *Id.* at *6.  It explained that "[w]hen Gresham ran away from Fis[c]her and did not stop when Fischer ordered him, Fischer reasonably interpreted Gresham's actions as an active attempt to evade arrest by flight."  *Id.* at *5.  Fischer was therefore "entitled to use force to prevent Gresham's escape and effect an arrest."  *Id.*  Similarly, when Gresham "continued to resist detention as the second officer handcuffed [him] after he fell," Fischer "was entitled to briefly use the Taser gun on Gresham a second time to prevent a second attempt to flee."  *Id.*  The Fifth Circuit affirmed the district court's order in a brief, unpublished *per curiam* opinion.  630 F. App'x at 358.

At least as far as the limited information in the Complaint reveals, this case and *Gresham* are very similar—both plaintiffs fled when an officer tried arresting them for minor substance use crimes, and the officers in both cases injured the plaintiff after thwarting his escape. *Compare* Compl. at 1, *with Gresham*, 2015 WL 4068638, at *1–2, *5.  Whether and how this case is *distinguishable* from *Gresham*—and, thus, whether Plaintiff has pleaded a valid excessive force claim—depends on information the Complaint does not contain, namely:

(1)      whether Plaintiff disobeyed the Officers' commands to stop;[16]

---

[15] Because Plaintiff hasn't alleged whether the Officers injured him with a weapon or their bodies, *see* Compl. at 1, the Court does not now decide whether the fact that Fischer used a taser precludes *Gresham* from serving as clearly established law, *cf. Henderson*, 51 F.4th at 134 (concluding that cases that "d[id] not involve tasing" did not constitute clearly established law in case challenging officer's taser use).

[16] *Compare Gresham*, 2015 WL 4068638, at *5 ("When Gresham ran away from Fis[c]her and did not stop when Fischer ordered him, Fischer reasonably interpreted Gresham's actions as an active attempt to evade arrest by flight.  Fischer was entitled to use force to prevent Gresham's escape and effect an arrest for evading arrest."), *with* Compl. at 1.

(2)     whether Plaintiff persisted in his efforts to escape or otherwise resisted arrest after the Officers made physical contact with him;[17] and

(3)     whether the Officers inflicted Plaintiff's injuries in the *process* of restraining him—or, instead, *after* they successfully immobilized him.[18]

Again, Plaintiff must "plead . . . facts regarding his own conduct during the incident"—as well as other "facts which would allow" the Court to determine "whether the [O]fficers' conduct was unreasonable"—to survive dismissal.  *See Jackson*, 958 F.2d at 621.

Nor can the Court assess whether the Officers "employ[ed] a measured and ascending response to" Plaintiff's escape attempt until it knows what the Officers actually did to Plaintiff. *See Joseph*, 981 F.3d at 336.[19]  The Complaint contains almost no factual allegations about the type and amount of force the Officers employed.[20]  The mere fact that the Officers inflicted

---

[17] *Compare Gresham*, 2015 WL 4068638, at *5 ("Gresham continued to resist detention as the second officer handcuffed Gresham after he fell."), *with* Compl. at 1.

[18] *Compare Gresham*, 2015 WL 4068638, at *5 (holding that because Gresham was actively resisting detention, "Fis[c]her was entitled to briefly use the Taser gun on" him while he was on the ground "to prevent a second attempt to flee"), *with Bush*, 513 F.3d at 502 ("Galloway should have known that he could not forcefully slam Bush's face into a vehicle while she was restrained and subdued."), *and Joseph*, 981 F.3d at 335 ("If the suspect lacks any means of evading custody—for example, by being pinned to the ground by multiple police officers—force is not justified."), *with* Compl. at 1 (asserting without elaboration that the Officers "assaulted him" after "they caught him").

[19] *Compare, e.g.*, *Joseph*, 981 F.3d at 343 (officers not entitled to qualified immunity when they subjected plaintiff to "twenty-six blunt-force strikes and two rounds of tasing in total," even though plaintiff initially attempted to flee), *with, e.g.*, *Juneau v. Orleans Parish*, No. 18-1152, 2018 WL 11463092, at *5 (E.D. La. Nov. 29, 2018) ("[The] plaintiff does not allege that [Deputy] Jackson punched him, kicked him or used any sort of weapon. . . . [T]he only action Jackson personally took against him was to tackle and restrain him as he was attempting to flee. . . . Jackson's tackling of plaintiff to prevent his unlawful flight was in no way unreasonable or excessive.").

[20] *See* Compl. at 1 (asserting, without elaboration, that the Officers "assaulted" and "beat" him); *id.* (alleging that the Officers employed enough force to cause "skull fractures, facial fractures, and brain injuries").

enough force to seriously injure Plaintiff does not necessarily mean that they exerted an amount of force that exceeded the need to avert his escape.[21]

To sum up, it's certainly possible that, as retaliation for forcing them to pursue Plaintiff on foot, the Officers needlessly, sadistically, and unlawfully beat him while he was completely and securely restrained.  But the Complaint is equally consistent with the possibility that the Officers justifiably used physical force against Plaintiff—even after they "caught" him—because he was actively and violently resisting arrest.  *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (explaining that the plaintiff must plead "allegations plausibly suggesting (not merely consistent with)" unlawful activity).  Without additional allegations regarding the Plaintiff's and the Officers' conduct, the Court can't determine whether Plaintiff can overcome the Officers' assertion of qualified immunity.  *See, e.g.*, *Arnold*, 979 F.3d at 267 ("[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." (quoting *Backe*, 691 F.3d at 648)).

### E.    Leave to Amend

Ordinarily, when granting a Rule 12(b)(6) motion, courts freely grant plaintiffs leave to amend their pleadings instead of dismissing the case entirely.  *See, e.g.*, *Doe v. Baylor Univ.*, 313 F. Supp. 3d 786, 793 (W.D. Tex. 2018).  A court may nonetheless "refuse leave to amend if the filing of the amended complaint would be futile, *i.e.*, 'if the complaint as amended would be

---

[21] *Compare* Resp. at 4 (arguing that "[u]nder no circumstances could flight alone lead to a reasonable application of force that would result in these types of injuries"), *with, e.g.*, *Juneau*, 2018 WL 11463092, at *1–2, *4–5 (concluding that officer's use of force was "in no way unreasonable or excessive"—even though suspect's impact with ground broke his ribs, tore off his eyelid, and knocked him unconscious—because the officer did not "punch[] him, kick[] him, or use[] any sort of weapon," but instead permissibly "tackle[d] and restrain[ed] him as he was attempting to flee").

subject to dismissal.'"  *E.g.*, *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting

*Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009)).

It doesn't appear that amending Plaintiff's Complaint would be futile.  To the contrary, as

the preceding section of this Opinion explains, more fulsome factual allegations could help the

Court evaluate whether the Officers are entitled to qualified immunity.[22]  The Court will

therefore let Plaintiff amend his Complaint.

### III.    CONCLUSION

The Court **GRANTS** "Defendant Officers Roberto Looney and Jose Witterstauter's Joint

Motion to Dismiss Plaintiff's Complaint" (ECF No. 21).

The Court **GRANTS** Plaintiff leave to amend his Complaint on or before **May 8, 2023**.

If he does so, the Officers' answer (or other response) to the Amended Complaint will be due **14**

**days** after Plaintiff files his amended pleading.  If he does not, the Court will dismiss the

Officers from the case.

**So ORDERED and SIGNED this 24th day of April 2023.**

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**

---

[22] *See, e.g.*, *Jones v. Gammage*, No. 4:20-CV-220, 2022 WL 601034, at *3 (N.D. Miss. Feb. 28, 2022) (granting leave to amend where additional factual allegations would "provide clarity as to the specific factual allegations and theories upon which the [p]laintiffs rel[ied]" and "allow the [c]ourt to analyze the qualified immunity defenses more thoroughly").